UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

 Plaintiff,         Case No: 08-20384
                Hon. Victoria A. Roberts

vs

D-1 JONATHONE J. JOHNSON,

 Defendant.
_____/

**ORDER GRANTING GOVERNMENT'S MOTION FOR RESTITUTION (DOC 178)**

**I. INTRODUCTION**

The United States filed a motion to increase Defendant Jonathone Johnson's restitution amount by $678,000. Johnson objects. He says that the Government's calculations and figures are unreliable.

The Court finds that the Government meets its burden to show that it used a reliable method to calculate losses in this mortgage fraud case. The Court **GRANTS** the Government's Motion.

**II. BACKGROUND AND PROCEDURAL HISTORY**

Johnson pled guilty pursuant to a Rule 11 Plea Agreement to one count of wire fraud in violation of 18 U.S.C. § 1343. The Court sentenced Johnson to 87 months in prison and ordered him to pay $90,100 in restitution. At sentencing, the Court left the issue of restitution open to allow victims of Johnson's fraud to come forward with more losses.

1

The Rule 11 Plea Agreement and other court documents reveal that Johnson was the leader in a large-scale mortgage fraud ring. From June 2003 to September 2005, Johnson purchased 45 properties in the City of Detroit, obtaining fraudulent appraisals which dramatically inflated the value of these properties. Johnson and his underlings then recruited straw buyers to purchase these properties for the highly inflated prices by creating fake financial documents to qualify for legitimate loans. The property loans defaulted resulting in substantial losses to various banking institutions.

On May 21, 2012, The Government filed a motion requesting an additional $678,000 in restitution on behalf of victim, the Federal Department Insurance Corporation (FDIC). The FDIC was appointed receiver for the failed NetBank. The Government explains that the FDIC seeks restitution only for the properties in which Netbank was the original lender.

On May 30, 2012, Johnson objected to the restitution request. He challenges the methodology the Government used to calculate the $678,000 figure. Johnson says that most of the properties were transferred and sold before foreclosure, and the sale price for the foreclosed properties does not properly reflect the actual value of the property or actual loss caused by Johnson's actions. Furthermore, Johnson says that some of the loss was the result of improper action by the mortgage lenders themselves.

**III.   Calculating Losses For Victims Under The Mandatory Victim Restitution Act – 18 U.S.C. § 3663 and § 3664.**

18 U.S.C. § 3663, the Mandatory Victim Restitution Act (MVRA) forces perpetrators of certain federal crimes to pay restitution. 18 U.S.C. § 3664 is the procedural mechanism for enforcing § 3663. The main purpose of the MVRA is to fully compensate victims for their

2

losses. Section 3664(f)(1)(a) states "[i]n each order of restitution, the court shall order restitution to each victim in the full amount of each victim's losses as determined by the court and without consideration of the economic circumstances of the defendant." However, the Supreme Court noted in *Hughey v. United States*, 495 U.S. 411, 420 (1990) that "the loss caused by the conduct underlying the offense of conviction establishes the outer limits of a restitution order."

Where there are disputes over the amount of restitution, § 3664(e) clearly places the burden on the government to prove that it has correctly calculated the figures:

> [a]ny dispute as to the proper amount or type of restitution shall be resolved by the court by the preponderance of the evidence. The burden of demonstrating the amount of loss sustained by a victim of the offense shall be on the attorney for the Government.

*Id.* When calculating losses, "[a] sentencing court may resolve restitution uncertainties with a view towards achieving fairness to the victim, so long as it still makes a reasonable determination of appropriate restitution rooted in a calculation of actual loss." *United States v. James*, 564 F.3d 1237, 1246 (10th Cir. 2009). Moreover, the Sixth Circuit notes, "loss need not be determined with precision. The court need only make a reasonable estimate of the loss, given the available information." *United States v. White*, 492 F.3d. 380, 416 (6th Cir. 2007). While the goal then is to meet the statutory objective, a court must make sure that the restitution order is reasonably calculated to only compensate victims for actual losses.

A method many circuit courts use to determine loss, especially when the loss relates to mortgages that have gone into foreclosure, is the "net loss" or "off set" method. The Tenth Circuit explains "[w]here a lender has foreclosed and sold the collateral, the net loss

3

should be determined by subtracting the sales price from the outstanding balance on the loan." *United States v. Washington*, 634 F.3d 1180, 1184 (10th Cir. 2011). *See also,* *United States v. Inmarelli*, 524 F.3d 286, 294 (1st Cir. 2008) (holding that court erred in restitution order since it "did not offset the amount recovered through the resale of the properties after foreclosure"). Thus, when calculating loss for restitution purposes, a court must subtract any recouped losses from the original loan to obtain the loss figure. This method ensures that the victim is only compensated for what it actually lost as a result of the defendant's conduct. It prevents the victim from double dipping and receiving more than what is due.

**IV.    ANALYSIS**

The Government must prove by a preponderance of the evidence that the restitution amount is accurate. The court may not "simply declare that the facts are supported by a preponderance of evidence*." United States v. White*, 492 F.3d 380 (6th Cir. 2007). Instead, a district court should articulate its reasoning. In making its decision, "the district court [may] utilize only evidence that possesses 'sufficient indicia of reliability to support its probable accuracy.'" *United States v. Wakine*, 543 F.3d 546, 557 (9th Cir. 2008).

The Government meets its burden. First, the Government demonstrates that it used a reliable and accurate method to calculate the loss figure. Second, the Government appropriately used the foreclosure sale price to help identify the value of the property that was recouped. Third, Johnson's main contention against the restitution motion is moot because the Government only seeks restitution for properties which had a single lender from the time of the original loan until the properties went into foreclosure.

**A. The Government used a reliable method to calculate the losses.**

4

The Government demonstrated that it used a reliable and accurate method to calculate the loss figure. In its Sentencing Memorandum, the Government explained that it compounded its figures by using the method illustrated in *Washington*:

> The banks provided loans totaling $5,898,550 to straw buyers involved in the scheme, after each home involved in this scheme went into foreclosure, the sales of the homes only recouped $965,008, leaving a total loss amount of $4,933,542 *** [U]sing the calculations approved by the Tenth Circuit in the *Washington* case – a case that is cited with approval by Johnson in his memorandum – the loss amount is nearly $5 million.

(Doc. 155 at 3-6). The Government attached two exhibits to the Sentencing Memorandum, which allows the Court to see how the Government calculated losses using the *Washington* method. Exhibit A lists the buyers, dates of purchase, sale prices, and the gross amount resulting from the Johnson's fraud. (Doc. 155-1 at 1). Exhibit B shows that the Government took the gross amount of the loans obtained by Johnson's fraud, and subtracted any amount a victim recouped on the property. (Doc. 155-2). These figures appear accurate.

Furthermore, in the Motion for Restitution, the Government attached a letter from victim FDIC, which shows that the FDIC calculated its losses by taking the initial loan amount and subtracting money it recouped at sale or foreclosure of the property. (Doc. 178-1). Thus, Johnson's assertion that the calculations and figures derived by the FDIC are unreliable is unfounded. The Government calculated the loss figure by using the "net gross method," an acceptable method which has been endorsed by various circuits such as the Tenth Circuit in *Washington*, the First Circuit in *United States v. Inmarelli*, *supra*, and the Second Circuit in *United States v. Oladimeji*, 463 F.3d 152, 160 (2nd Cir. 2006).

The Court finds that the Government proves its figures and calculations to be reasonable and reliable by a preponderance of the evidence.

**B. Measuring the value of property by its foreclosure price is an appropriate method to calculate loss for restitution purposes.**

Johnson takes issue with the fact that the Government used the foreclosure sale price as a factor in determining the restitution amount. He says that using the "foreclosure sale price fails to adequately reflect the actual value of the homes, or the actual loss incurred." (Doc. 179 at 1). Johnson is under the misapprehension that there is only one way to calculate loss amount in situations such as this. The Second Circuit noted in *United States v. Boccagna*, 450 F.3d 107, 114 (2nd Cir. 2006) that:

> The statute [3663] is silent… on the question of how the referenced property is to be valued…. the law recognizes a number of reasonable measures of property value, … we construe "value" as used in the MVRA to be a flexible concept to be calculated by a district court by the measure that best serves Congress's statutory purpose… Notwithstanding the general reliability of fair market value as a measure of property value, in some circumstances other measures of value may more accurately serve the statutory purpose to ensure a crime victim's recovery of the full amount of his loss.

*Id.* (citations omitted). Thus, a court has discretion to determine the appropriate measure of value of a victim's loss for restitution purposes. Value must adequately reflect the losses of the victim. Furthermore, numerous courts have used the foreclosure sale amount to determine the property's value. For instance, in *United States v. Oladimeji, supra,* the Second Circuit stated, "had Household Finance recouped some part of the $30,000 – whether by receipt of loan payments or by foreclosure-it would have been error to require restitution in the full amount of the loan…restitution must take into account any portion of property that has already been returned to the victim." *Id.* at 160. Moreover, in *United States v. James*, 564 F.3d 1237, 1246 (10th Cir. 2009) the Tenth Circuit noted that:

> the district court determined the best measure of calculating [the victim's] actual loss was by using the amount of money it procured from the

foreclosure sale and then subtracting that amount from the amount of the mortgage on which [the defendant] had defaulted. If the district court had used the assessed value instead, which is an approximate value of the property, that measure would not have as closely represented the "calculation of actual loss " incurred by [the victim]. In other words, the assessed value … might represent the approximate value of the property, but not best represent the actual loss [the victim] experienced when it sold the property at foreclosure for the lower price.

Due to Johnson's fraud, the properties involved in the scheme went into foreclosure and had to be sold for the low foreclosure amounts. Therefore, the Government appropriately used the foreclosure sale price as a measure of how much money the victim recouped in order to determine the victim's losses for restitution purposes. The Government's use of the foreclosure sale price to determine the value of the properties was appropriate.

### C. The Government only seeks restitution for properties in which NetBank was the lender in place for the original loan until the foreclosure of the property.

Johnson's main opposition to the restitution order is grounded in his belief that the mortgages were transferred through intermediary lenders, and since the Government failed to track these mortgages, the actual loss cannot be accurately estimated. This contention is erroneous. In its Motion for Restitution, the Government clearly states that it only seeks restitution for properties which remained with the original lender until foreclosure.

However, even if the Government attempted to recoup the losses for properties involving intermediary lenders, Johnson could still be liable for the additional restitution amount. The Tenth Circuit noted that when successor lenders have purchased the loan or collateral from the original lender, the method of subtracting the successor lender's sale amount from the has from the original loan amount, may be used if the transfer and losses

7

to both the original and subsequent lenders are reasonably foreseeable. *Washington*, 634 F.3d at 1185. *See also*, James, 592 F.3d at 1116 n. 4. Furthermore, the Tenth Circuit noted that "using the amount financed by the original lender as a starting point… is improper when there is no evidence suggesting that the loans were sold to the successor lenders for sums approximating the original loan amount. *United States v. James,* 592 F.3d 1109,1115 (10th Cir. 2010). Thus, if the loans that were sold to successor lenders were for approximately the same amount of the original loan, Johnson could still be liable for restitution on properties with multiple lenders.

## V. CONCLUSION

The Government's motion for restitution is **GRANTED**; Johnson is ordered to pay an additional $678,000 in restitution.

**IT IS ORDERED.**

s/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: February 28, 2013

The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on February 28, 2013.

s/Carol A. Pinegar
Deputy Clerk